Margaret CHANCE, Appellant–Plaintiff,

v.

STATE AUTO INSURANCE COMPANIES, Appellee–Defendant.

No. 02A03–9611–CV–410.

Court of Appeals of Indiana.

Sept. 4, 1997.

Rehearing Denied Oct. 30, 1997.

Karl L. Mulvaney, James P. Strenski, Candace L. Sage, Bingham Summers Welsh & Spilman, Indianapolis, R.T. Green, Blackburn & Green, Fort Wayne, for Appellant–Plaintiff.

Donald R. Clifford, William J. Tutwiler, Clifford, Larmore, Nakos & Tutwiler, Fort Wayne, for Appellee–Defendant.

## OPINION

STATON, Judge.

Margaret Chance appeals the trial court's grant of summary judgment in favor of State Auto Insurance Companies. She presents three issues for our review which we consolidate and restate as: Whether her son, Shane Clem, was a resident of her household for purposes of coverage under her insurance policy with State Auto.

We affirm.

The facts most favorable to Chance, the non-movant, reveal that she and her husband, Shane's stepfather, moved from Marion to Fort Wayne. When it became apparent that Shane was not performing well in the Fort Wayne school system, Chance and her husband decided to move back to Marion. In February 1993, while his parents were attempting to sell their house, Shane moved to Marion to live with his brother Steven and to attend school. So that Shane could attend the Marion schools without paying tuition, Chance executed a Third Party Custodial Statement and Agreement.[1] However, Chance states that she continued to provide support for Shane and he usually returned to Fort Wayne for the weekends.

On June 29, 1993, Shane was a passenger in a car driven by William Dils. Dils lost control of the car, left the road and hit a tree. Shane was killed in the accident. Dils, who is not a party to this appeal, did not have automobile insurance. Chance made a claim under Steven's automobile insurance uninsured motorists provision. In that claim, she stated that Shane was a resident of Steven's household. Chance's husband also had an insurance policy issued by State Auto. After receiving the proceeds from Steven's insurance policy, Chance attempted to file a claim under the State Auto policy. The uninsured motorist provision of the State Auto policy provides coverage for family members of the insured. A family member is defined as "a person related to you by blood, marriage or adoption who is a resident of your household. This includes a ward or foster child." Record at 120. When State Auto refused to pay the claim because Shane was a resident of Steven's household, rather than Chance's household, Chance filed this declaratory judgment action. Upon State Auto's motion, the trial court granted summary judgment in its favor on the issue of Shane's residence.

Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind.Trial Rule 56(C). The burden is on the moving party to prove there are no genuine issues of material fact and he is entitled to judgment as a matter of law. Once the movant has sustained this burden, the opponent must respond by setting forth specific facts showing a genuine issue for trial; he may not simply rest on the allegations of his pleadings. *Stephenson v. Ledbetter*, 596 N.E.2d 1369, 1371 (Ind.1992). At the time of filing the motion or response, a party shall designate to the court all parts of pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters on which it relies for purposes of the motion. T.R. 56(C).

When reviewing an entry of summary judgment, we stand in the shoes of the trial court. We do not weigh the evidence but will consider the facts in the light most favorable to the nonmoving party. *Reed v. Luzny*, 627 N.E.2d 1362, 1363 (Ind.Ct.App.1994), *reh. denied, trans. denied*. We may sustain a sum-

---

1. The custodial agreement provided, *inter alia:*
   The student was placed with the custodian by the student's parent(s). The custodian is supporting and caring for the student. The student was not placed with the custodian for the primary purpose of attending school in the school corporation of the custodian's residence.

   Record at 197. The portion of the agreement signed by Steven provided:
   I am supporting and caring for the student. The primary purpose of the student residing with me is not to attend school in the school corporation of my residence.
   *Id.*

mary judgment upon any theory supported by the designated materials. T.R. 56(C).

■ Chance argues that Shane was a resident of both her household and Steven's household for purposes of coverage under the insurance contract. The term residence has no fixed or precise meaning in Indiana law. *Johnson v. Payne,* 549 N.E.2d 48, 50 (Ind.Ct. App.1990), *trans. denied.* However, the term residence is given a broad meaning in cases in which it must be determined whether coverage should be extended to someone other than the named insured. *Aetna Casualty & Surety Co. v. Crafton,* 551 N.E.2d 893, 895 (Ind.Ct.App.1990). To establish a residence, more than mere physical presence is necessary. *Id.* A party's subjective intent is an important consideration. *Id.*

■ Here, Chance attempts to argue that her intent was not to give Steven full custody over Shane, but to only give him limited custody for the purpose of allowing Shane to attend school in Marion. In her affidavit, she states that she still provided support to Shane and that he would stay with her on the weekends. In addition, she states that it was only a temporary situation and that when she and her husband moved, Shane would again be living with them. However, Chance is estopped from stating that she only intended to give Shane custody for school purposes and that she still provided for his support. The Custodial Agreement she signed to allow Shane to attend Marion Schools stated that the arrangement was not solely for the purpose of allowing Shane to attend school in Marion. In addition, in the statement she said that Steven was supporting Shane. A party cannot create an issue of material fact for summary judgment purposes by contradicting a prior sworn statement. *Keesling v. Baker & Daniels,* 571 N.E.2d 562, 568 (Ind.Ct.App.1991), *trans. denied* (citing *Gaboury v. Ireland Road Grace Brethren, Inc.,* 446 N.E.2d 1310 (Ind.1983), *reh. denied* ). This is exactly what Chance is attempting to do. Moreover,

she stated in her claim under Steven's insurance policy that Shane was a resident of Steven's household. The actions of the parties and the prior statements of the parties lead inescapably to the conclusion that Chance gave temporary custody of Shane to Steven and that Shane had relocated his residence to Steven's house.[2] Accordingly, we conclude that the trial court properly granted summary judgment in favor of State Auto.

Affirmed.

GARRARD, J., concurs.

ROBERTSON, J., dissents with separate opinion.

ROBERTSON, Judge, dissenting.

I respectfully dissent. The undisputed evidence leads unerringly to the conclusion that Shane remained a resident of his mother's and stepfather's "household" despite the fact he moved in with his brother in order to attend school in Marion.

As noted in *Sutton v. Littlepage,* 669 N.E.2d 1019 (Ind.Ct.App.1996):

The interpretation of an insurance policy is primarily a question of law for the court, and it is therefore a question which is particularly suited for disposition by summary judgment. Where there is an ambiguity, policies are to be construed strictly against the insurer. This is particularly true where a policy excludes or limits coverage. Strict construction means that the insurer is bound by the plain and ordinary meaning of the words viewed from the standpoint of the insured. Strict construction against the insurer is 'driven by the fact that the insurer drafts the policy and foists its terms upon the customer.' 'The insurance companies write the policies; we buy their forms or we do not buy insurance.'

*Id.* at 1021 (Citations omitted). In construing terms in an insurance policy, we apply

---

**2.** Chance also attempts to argue that Shane resided in her household because an unemancipated minor's residence is the same as that of his parents. To support that argument, she cites *State Election Board v. Bayh,* 521 N.E.2d 1313, 1317 (Ind.1988). However, that holding is based on the assumption that the parent had not relinquished custody of the child to a third party as Chance had done. Moreover, this is distinguishable from situations where a child's parents are divorced and the child resides with both parents. In that case, it is possible, given the circumstances, for the child to be a resident of both parents' households.

the rule of construction which favors coverage of the insured. *Allstate Insurance Company v. Neumann,* 435 N.E.2d 591, 593 (Ind. Ct.App.1982). Thus, a term is to be given its broad meaning in so-called "extension" cases, and is construed narrowly in "exclusion" cases. *Id.* Accordingly, under appropriate circumstances, a person may have more than one residence for the purpose of qualifying as an "insured" under an insurance policy. *Id.*

The majority has neglected to cite *Erie Insurance Exchange v. Stephenson,* 674 N.E.2d 607 (Ind.Ct.App.1996), in which we noted that the term:

'Household is not a word of art. Its meaning is not confined within certain commonly known and universally accepted limits. True, it is frequently used to designate persons related by marriage or blood, who dwell together as a family under a single roof. But it has been said also that members of a family need not in all cases reside under a common roof in order to be deemed a part of the household.'

*Id.* at 610 (Quoting *Mazzilli v. Accident & Casualty Insurance Co. of Winterthur, Switzerland,* 35 N.J. 1, 170 A.2d 800, 804 (1961)). The *Mazzilli* decision relied on in *Erie* went on to note:

We have discovered no cases directly in point with the present one. It does appear, however, from cases wherein the courts were required to appraise the outer limits of 'household,' that when some benefit would accrue to a member of the family by a broad construction, such view was adopted. This seems to have been particularly true where the right to the benefit was being contested on the ground that the claimant did not live under the same roof and therefore was not a member or resident or part of the household.

\*　　\*　　\*　　\*　　\*　　\*

... the term 'household' or 'resident of the household' cannot be so limited and strait-jacketed as always to mean, regardless of facts and circumstances, a collective body of persons who live in one house.... Under all the circumstances, it is not unreasonable to conclude that both dwellings constituted "the" household and that parents and son were residents of it within the contemplation of the insurance policy. As

has been said, there is no absolute requirement in the law that members or residents of the household must live under a common roof. If the insurer wished to impose such a restriction it would have been a simple matter to do so by express language. Failure to be explicit in that regard makes it the duty of the court to adopt the construction which favors extension of coverage.

170 A.2d at 804–08 (Citations omitted). In *Erie,* 674 N.E.2d 607, we joined the overwhelming majority of jurisdictions which have interpreted the term "household" in insurance contracts broadly. *See* David B. Harrison, Annotation, *Who is "Resident" or "Member" of same "Household" or "Family" as Named Insured, Within Liability Insurance Provision Defining Additional Insureds,* 93 A.L.R.3d 420 (1979). The cases have unanimously held that a child living apart from his parents remains a member of their household while he is attending an educational institution. *Id.* at § 8, p. 446. *See Aetna Casualty & Surety Co. v. DeBruicker,* 838 F.Supp. 215 (E.D.Pa.1993), *affirmed,* 30 F.3d 1484; *State Farm Mutual Automobile Insurance Co. v. Hasemeier,* 534 So.2d 833, 13 FLW 2628 (1988); *Lewis v. Dairyland Insurance Co.,* 169 Ga.App. 265, 312 S.E.2d 165 (1983); *Federated American Insurance Co. v. Childers,* 45 Or.App. 379, 608 P.2d 584 (1980); *Crossett v. St. Louis Fire & Marine Insurance Co.,* 289 Ala. 598, 269 So.2d 869 (1972); *Montgomery v. Hawkeye Security Insurance Co.,* 52 Mich.App. 457, 217 N.W.2d 449 (1974); *Aetna Casualty & Surety Co. v. Means,* 382 F.2d 26 (10th Cir. (Okla.) 1967); *American States Insurance Company v. Walker,* 26 Utah 2d 161, 486 P.2d 1042 (1971).

In the present case, Shane moved out of his mother's and stepfather's house and into his brother's house in order to attend school in Marion. The Third Party Custodial Statement and Agreement was executed in order that Shane could attend school without paying tuition. The undisputed evidence shows that Shane was Chance's natural, unemancipated, minor son, and that Chance was his legal custodian with respect to all matters other than those having to do with the arrangement to facilitate Shane's attendance of

school in Marion. Shane resided with his mother and stepfather almost every weekend and kept most of his personal belongings at their home. Chance paid for Shane's food, books, and school supplies. The Chances claimed Shane as a dependent on their income tax statement.

The State Auto policy in question did not define the term "household." Accordingly, the term must be strictly construed against State Auto. *See Erie,* 674 N.E.2d at 610. Had State Auto wanted to invoke a more narrow definition of the term "household," it could have done so in its policy. *See id.*

The undisputed evidence reveals that Shane was living apart from his mother and stepfather in order to attend school. Therefore, I must conclude that Shane remained a resident of his mother's and stepfather's household as a matter of law and, as such, was insured under the policy in question. Accordingly, summary judgment in favor of State Auto should be reversed and summary judgment should instead be entered in favor of Chance. *See Motorists Mutual Insurance Co. v. Morris,* 654 N.E.2d 861, 862 (Ind.Ct. App.1995) (The appellate court may determine as a matter of law that summary judgment was entered for the wrong party).